## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## MACON DIVISION

| | |
|---|---|
| **WALTER LAWRENCE KENNEY,** | : |
| | : |
| **Plaintiff,** | : |
| | : |
| **VS.** | :     **NO. 5:23-CV-00509-MTT-CHW** |
| | : |
| **GDC COMMISSIONER TYRONE** | : |
| **OLIVER,** *et al.*, | : |
| | : |
| **Defendants.** | : |
| _____ | : |

## ORDER AND RECOMMENDATION

Presently pending before the Court is a Complaint filed by *pro se* Plaintiff Walter

Lawrence Kenney, an inmate in the Dooly State Prison in Unadilla, Georgia (ECF No. 1).

Plaintiff has also moved for leave to proceed *in forma pauperis* (ECF No. 3), and he has

requested appointment of counsel.   For the following reasons, Plaintiff's motion to

proceed *in forma pauperis* is **GRANTED**, but Plaintiff's request for appointed counsel is

**DENIED.**   In addition, it is **RECOMMENDED** that Plaintiff's claims be **DISMISSED**

**without prejudice** for failure to state a claim upon which relief may be granted.

### MOTION TO PROCEED *IN FORMA PAUPERIS*

Plaintiff seeks leave to proceed without prepayment of the filing fee or security

therefor pursuant to 28 U.S.C. § 1915(a).   A review of Plaintiff's submissions

demonstrates that he is presently unable to pay the cost of commencing this action.   His

application to proceed *in forma pauperis* (ECF No. 3) is therefore **GRANTED**.

However, even if a prisoner is allowed to proceed *in forma pauperis*, he must

nevertheless pay the full amount of the $350.00 filing fee.   28 U.S.C. § 1915(b)(1).   If the prisoner has sufficient assets, he must pay the filing fee in a lump sum.   If sufficient assets are not in the account, the court must assess an initial partial filing fee based on the assets available.   Despite this requirement, a prisoner may not be prohibited from bringing a civil action because he has no assets and no means by which to pay the initial partial filing fee. 28 U.S.C. § 1915(b)(4).   In the event the prisoner has no assets, payment of the partial filing fee prior to filing will be waived.

Plaintiff's submissions indicate that he is unable to pay the initial partial filing fee. Accordingly, it is hereby **ORDERED** that his complaint be filed and that he be allowed to proceed without paying an initial partial filing fee.

## I.    Directions to Plaintiff's Custodian

Hereafter, Plaintiff will be required to make monthly payments of 20% of the deposits made to his prisoner account during the preceding month toward the full filing fee.   The clerk of court is **DIRECTED** to send a copy of this Order to Plaintiff's current place of incarceration.   It is **ORDERED** that the warden of the institution wherein Plaintiff is incarcerated, or the sheriff of any county wherein he is held in custody, and any successor custodians, shall each month cause to be remitted to the Clerk of this Court twenty percent (20%) of the preceding month's income credited to Plaintiff's account at said institution until the $350.00 filing fee has been paid in full.   28 U.S.C. § 1915(b)(2). In accordance with provisions of the Prison Litigation Reform Act ("PLRA"), Plaintiff's custodian is hereby authorized to forward payments from the prisoner's account to the

Clerk of Court each month until the filing fee is paid in full, provided the amount in the account exceeds $10.00. It is **ORDERED** that collection of monthly payments from Plaintiff's trust fund account shall continue until the entire $350.00 has been collected, notwithstanding the dismissal of Plaintiff's lawsuit or the granting of judgment against him prior to the collection of the full filing fee.

## II.     Plaintiff's Obligations Upon Release

An individual's release from prison does not excuse his prior noncompliance with the provisions of the PLRA. Thus, in the event Plaintiff is hereafter released from the custody of the State of Georgia or any county thereof, he shall remain obligated to pay those installments justified by the income to his prisoner trust account while he was still incarcerated. The Court hereby authorizes collection from Plaintiff of any balance due on these payments by any means permitted by law in the event Plaintiff is released from custody and fails to remit such payments. Plaintiff's Complaint may be dismissed if he is able to make payments but fails to do so or if he otherwise fails to comply with the provisions of the PLRA.

## REQUEST FOR APPOINTED COUNSEL

Plaintiff also seeks the appointment of counsel in this action. Compl. 8, ECF No. 1. As this is Plaintiff's first request for counsel, the Court advises Plaintiff that "[a]ppointment of counsel in a civil case is not a constitutional right." *Wahl v McIver*, 773 F.2d 1169, 1174 (11th Cir. 1986). Appointment of counsel is a privilege that is justified only by exceptional circumstances. *Id*. In deciding whether legal counsel should be

provided, the Court considers, among other factors, the merits of Plaintiff's claim and the complexity of the issues presented. *Holt v. Ford*, 862 F.2d 850, 853 (11th Cir. 1989).[1]   But "[t]he key" in determining whether appointed counsel is warranted "is whether the *pro se* litigant needs help in presenting the essential merits of his position to the court."   *Nelson v. McLaughlin*, 608 F. App'x 904, 905 (11th Cir. 2015) (per curiam)

In accordance with *Holt*, and upon a review of the record in this case, the Court notes that Plaintiff has set forth the essential merits of his claims, and the applicable legal doctrines are readily apparent. As such, Plaintiff's request for appointed counsel is **DENIED**.

## PRELIMINARY REVIEW OF PLAINTIFF'S COMPLAINT

### I.    Standard of Review

The PLRA obligates the district courts to conduct a preliminary screening of every complaint filed by a prisoner who seeks redress from a government entity, official, or employee.   *See* 28 U.S.C. § 1915A(a).   Screening is also required under 28 U.S.C. § 1915(e) when the plaintiff is proceeding IFP.   Both statutes apply in this case, and the standard of review is the same.   When conducting preliminary screening, the Court must accept all factual allegations in the complaint as true.   *Boxer X v. Harris*, 437 F.3d 1107,

---

[1] The federal *in forma pauperis* statute authorizes courts to "request an attorney to represent any person unable to afford counsel," 28 U.S.C. § 1915(e)(1). The statute does not, however, provide any funding to pay attorneys for their representation or authorize courts to compel attorneys to represent an indigent party in a civil case. *See Mallard v. U.S. Dist. Ct. for S. Dist. of Iowa*, 490 U.S. 296 (1989).

1110 (11th Cir. 2006) *abrogated in part on other grounds by Wilkins v. Gaddy*, 559 U.S. 34 (2010); *Hughes v. Lott*, 350 F.3d 1157, 1159-60 (11th Cir. 2003). *Pro se* pleadings, like the one in this case, are "'held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed.'" *Hughes*, 350 F.3d at 1160 (citation omitted). Still, the Court must dismiss a prisoner complaint if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. §1915A(b).

A claim is frivolous if it "'lacks an arguable basis either in law or in fact.'" *Miller v. Donald*, 541 F.3d 1091, 1100 (11th Cir. 2008) (citation omitted). The Court may dismiss claims that are based on "'indisputably meritless legal'" theories and "'claims whose factual contentions are clearly baseless.'" *Id.* (citation omitted). A complaint fails to state a claim if it does not include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The factual allegations in a complaint "must be enough to raise a right to relief above the speculative level" and cannot "'merely create[] a suspicion [of] a legally cognizable right of action.'" *Twombly*, 550 U.S. at 555 (citation omitted). In other words, the complaint must allege enough facts "to raise a reasonable expectation that discovery will reveal evidence" supporting a claim. *Id.* at 556. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

To state a claim for relief under § 1983, a plaintiff must allege that (1) an act or omission deprived him of a right, privilege, or immunity secured by the Constitution or a statute of the United States; and (2) the act or omission was committed by a person acting under color of state law.   *Hale v. Tallapoosa Cnty.*, 50 F.3d 1579, 1582 (11th Cir. 1995). If a litigant cannot satisfy these requirements or fails to provide factual allegations in support of his claim or claims, the complaint is subject to dismissal.   *See Chappell v. Rich*, 340 F.3d 1279, 1282-84 (11th Cir. 2003).

## II.    Factual Allegations

Plaintiff's Complaint raises claims based on his recent incarceration at the Washington and Dooly State Prisons.   Compl. 5, ECF No. 1.   Plaintiff first alleges he was attacked by his cellmate at Washington State Prison ("WSP") on January 31, 2023.   *Id.*   Plaintiff suffered significant injuries, including a broken nose, cracked rib, and a broken hand.   *Id.*   In addition, the lens of Plaintiff's left eye was "knocked out of place," causing Plaintiff to be legally blind in that eye.   *Id.*   Plaintiff contends that other than "the initial diagnostic visits to doctors at 2 hospitals," prison officials at WSP denied him medical care for the injuries he suffered in this attack.   *Id.*   Prison officials transferred Plaintiff to another cell after the attack, but in doing so they also lost most of his belongings.   *Id.*

On February 28, 2023, Plaintiff was transferred to Dooly State Prison ("DSP").   Compl. 5, ECF No. 1.   Plaintiff states that prison officials at DSP have likewise denied him adequate medical care for his eye injury.   *Id.*   On August 22, 2023, Plaintiff saw a retinal specialist who led Plaintiff to believe that he would receive a lens replacement

surgery to restore his vision "soon." *Id.* Despite these assurances, Plaintiff has not received this surgery. *Id.*

Plaintiff also states that he has "been denied access to qualified medical personnel for a variety of other medical needs" at DSP. Compl. 6, ECF No. 1. Plaintiff alleges that prison officials have failed to fill his prescriptions, respond to his requests for medical treatment, or see him whenever he "do[es] succeed in getting a callout for a medical appointment." *Id.* at 5-6.

In addition, Plaintiff complains about the conditions of his confinement at DSP. He states that the prison is subject to "frequent lockdowns or being locked in the dorm for days at a time." Compl. 6, ECF No. 1. In addition, Plaintiff claims that he is being bunked "in a 3 man room, which has been held to be illegal." *Id.* Plaintiff also mentions that prison officials refuse to transfer him "to a better place" and that his dorm has no heat. *Id.* at 6, 8.

Plaintiff contends that Defendants' acts and omissions violated his constitutional rights. As a result, Plaintiff seeks appointment of counsel, injunctive relief, and compensatory damages. Compl. 8, ECF No. 1.

### III.    Plaintiff's Claims

#### A.    *Deliberate Indifference to Safety*

Plaintiff's allegations could first give rise to a claim that prison officials failed to prevent him from being attacked at WSP. *See, e.g.,* Compl. 5, ECF No. 1. Claims that prison officials were deliberately indifferent to an inmate's safety are generally cognizable

under the Eighth Amendment to the United States Constitution.   *See, e.g., Farmer v. Brennan*, 511 U.S. 825, 837 (1994).   A prisoner asserting this type of Eighth Amendment claim must allege (1) a substantial risk of serious harm; (2) the prison officials' deliberate indifference to that risk; and (3) causation.   *Goodman v. Kimbrough*, 718 F.3d 1325, 1331 (11th Cir. 2013).   To establish deliberate indifference in this context, a prisoner must show that prison officials subjectively knew of the substantial risk of serious harm and that the prison officials knowingly or recklessly disregarded that risk.   *Id.* at 1332.

The subjective component of deliberate indifference requires a prisoner to allege facts showing that a prison official had "'more than a generalized awareness of risk'" to the prisoner.   *Marbury v. Warden*, 936 F.3d 1227, 1234 (11th Cir. 2019) (quoting *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1101-02 (11th Cir. 2014)).   The inmate can do this by pleading facts showing "that he was in an environment so beset by violence that confinement, by its nature, threatened him with the substantial risk of serious harm" or by providing prison officials with details about a specific threat sufficient "to enable them to conclude that it presents a 'strong likelihood' of injury, not a 'mere possibility.'"   *Id.* at 1235-36 (quoting *Brooks v. Warden*, 800 F.3d 1295, 1301 (11th Cir. 2015)); *see also Estate of Owens v. GEO Group, Inc.*, 660 F. App'x 763, 769 (11th Cir. 2016) (per curiam) (identifying "the particularized risk claim" and "the dangerous conditions" claim as the two theories under which inmates may seek to advance an Eighth Amendment failure-to-protect claim).   The objective prong requires the prisoner to allege facts establishing that the prison official objectively "responded to the known risk in an unreasonable manner, in

that he or she knew of ways to reduce the harm but knowingly or recklessly declined to act." *Marbury*, 936 F.3d 1234-35 (internal quotation marks omitted).

Plaintiff has not alleged facts sufficient to state an actionable claim under either of these theories. Plaintiff does not allege that any named Defendant subjectively knew that Plaintiff's roommate posed a specific threat to Plaintiff and could have prevented the attack. At most, Plaintiff has alleged that Defendant Kitchens knew other members of the same gang as Plaintiff's attacker previously threatened to kill Plaintiff's previous cellmate. Compl. 8, ECF No. 1. This allegation does not support a contention that Defendant Kitchens knew Plaintiff's attacker posed a specific threat to Plaintiff. *Cf. Rodriguez v. Dep't of Corrs.,* 508 F.3d 611, 614 (11th Cir. 2007) (holding that prison official had subjective knowledge of danger faced by plaintiff where plaintiff informed prison official "on at least two occasions that his life had been threatened by members of his former gang" and that he "feared for his safety in the compound"). Plaintiff also fails to allege that WSP was a prison "where violence and terror reign[ed]" and was thus so dangerous that he faced a substantial risk of serious harm simply because he was housed there. *Marbury*, 936 F.3d at 1234 (internal quotation marks omitted). These claims should therefore be dismissed without prejudice.

B. *Medical Treatment Claims*

Plaintiff next alleges that he did not receive adequate medical care for the injuries he suffered in the January 31, 2023 attack. Compl. 5, ECF No. 1. These allegations give rise to claims that Defendants were deliberately indifferent to his serious medical needs in

9

violation of the Eighth Amendment to the United States Constitution. *See Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003). To show that a state actor was deliberately indifferent to his serious medical needs, "a plaintiff must satisfy both an objective and a subjective inquiry." *Id.* A plaintiff must first "set forth evidence of an objectively serious medical need*"* and then prove that the defendant "acted with an attitude of 'deliberate indifference' to that serious medical need." *Id.* In other words, the defendant must both "know of and then disregard an excessive risk to the prisoner." *Dunn v. Martin*, 178 F. App'x 876, 877 (11th Cir. 2006) (per curiam). For purposes of this analysis, a "serious medical need" is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Farrow*, 320 F.3d at 1243 (internal quotation marks omitted). A serious medical need can also arise if "a delay in treating the need worsens the condition." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1307 (11th Cir. 2009). "In either case, 'the medical need must be one that, if left unattended, poses a substantial risk of serious harm.'" *Id.* (quoting *Farrow*, 320 F.3d at 1243).

1.   <u>Treatment at WSP</u>

Plaintiff suffered broken bones and a significant injury to his eye in the January 31, 2023 attack at WSP. Compl. 5, ECF No. 1. Plaintiff has thus sufficiently alleged he had serious medical needs at WSP at the time he was attacked. Plaintiff has not, however, sufficiently alleged that any named Defendant from WSP was deliberately indifferent to those serious medical needs prior to his transfer to DSP on February 28, 2023. Plaintiff's

10

allegations concerning WSP officials' actions are sparse, but Plaintiff does allege that he had two "initial diagnostic visits" at hospitals in the month between the attack and his transfer.   Compl. 5, ECF No. 1.   Plaintiff does not allege any facts indicating that these initial visits were insufficient to treat his broken bones or stabilize his eye condition. Thus, Plaintiff has failed to state a claim that any WSP officials failed to provide him adequate medical care for his emergent medical needs immediately following the attack.

Plaintiff also suggests that WSP officials violated the Eighth Amendment when they delayed his eye surgery by transferring him to DSP.   Compl. 5, ECF No. 1.   While a delay in providing medical care can sometimes amount to deliberate indifference, Plaintiff has failed to establish the existence of a constitutional violation here.   Plaintiff has not alleged that any delay in performing his eye surgery posed a risk to his health or caused his eye condition to worsen or become more permanent.   *See, e.g., Mann*, 588 F.3d at 1307 (holding that "a serious medical need is determined by whether a delay in treating the need worsens the condition"); *see also Jackson v. Jackson*, 456 F. App'x 813, 815 (11th Cir. 2012) (per curiam) (holding that where "delay did not worsen [plaintiff's] condition, the fact that plaintiff "felt he should have had surgery earlier than he did is insufficient to support a deliberate indifference claim"); *Stewart v. Lewis*, 789 F. App'x 825, 829 (11th Cir. 2019) (per curiam) (holding that plaintiff's failure to demonstrate that there was an urgent need for surgery to treat chronic condition meant that delay in surgery did not rise to level of constitutional violation); *Thomas v. Poveda*, 518 F. App'x 614, 620-21 (11th Cir. 2013) (per curiam) (holding that two-month delay between doctor recommending

additional therapy and doctor making formal request for therapy could not amount to deliberate indifference where there "was no evidence to support a conclusion that the delay was due to more than mere negligence, that the therapy was needed on an emergency basis, or that the delay worsened [plaintiff's] condition").  Moreover, even if Plaintiff had established his requirement for surgery amounted to a serious medical need, Plaintiff has not identified which WSP officials were responsible for his transfer or that they knew the transfer would delay his surgery but transferred him anyway.   As such, Plaintiff has failed to state an actionable Eighth Amendment claim against any WSP official named as a Defendant in this action.  *Douglas v. Yates*, 535 F.3d 1316, 1321-22 (11th Cir. 2008) (dismissal of defendants appropriate where plaintiff failed to allege facts associating defendants with a particular constitutional violation).

### 2. Treatment at DSP

Plaintiff also states that he has "been denied reasonable medical care" while at DSP. Compl. 5, ECF No. 1.   Plaintiff first suggests that DSP officials continue to delay his eye surgery; although he saw a retinal specialist on August 22, 2023, the surgery itself has not yet been scheduled.  *Id.*   Again, however, Plaintiff has not pleaded any facts indicating that this delay in surgery has caused his eye condition to worsen, nor has he described any functional limitations to his daily activities or other symptoms caused by his condition that would indicate that it amounts to a serious medical need.  *Cf. Koehl v. Dalsheim*, 85 F.3d 86, 88 (2d Cir. 1996) (holding that inmate's need for prescription eyeglasses amounted to serious medical need where glasses were prescribed to alleviate severe double vision and

loss of depth perception resulting from head injury, and inmate had fallen and walked into objects and injured himself without glasses); *Benter v. Peck*, 825 F. Supp. 1411, 1416-17 (S.D. Iowa 1993) (prisoner's legal blindness considered a serious medical need where "[t]estimony showed that because of [inmate's] poor vision without his glasses, he was unable to work at the prison or function in the general prison population").   Plaintiff also fails to specifically identify in the body of his Complaint which named Defendants were responsible for the alleged delays.   *See Douglas*, 535 F.3d at 1321-22.   Plaintiff's Complaint, as currently pleaded, therefore fails to state an actionable Eighth Amendment claim against DSP officials based on his delayed eye surgery.

Plaintiff further contends he has "been denied access to qualified medical personnel for a variety of other medical needs" at DSP.   Compl. 5, ECF No. 1.   More specifically, Plaintiff contends he has been denied vitamins he had been allowed to have at other facilities, that he has a "severe need[]" for laxatives due to constipation caused by prior surgeries and medications prescribed for other conditions, and that he experiences "severe itching from something in the water" at DSP.   *Id.*   Plaintiff alleges that his "many medical requests and call-outs" concerning these issues have been "ignored, denied, or 'rescheduled' for a non-existent date."   *Id.*   He contends that "[t]his has happened at least 20 times in the almost 10 months" since he has been housed at DSP.   *Id.* at 6.

While Plaintiff's allegations that he has been repeatedly denied access to medical services are concerning, Plaintiff has again failed to provide enough detail about these conditions, their symptoms, or their effects on his day-to-day life to permit the Court to

conclude that any of these conditions amount to serious medical needs. *Compare Carswell v. Bay Cnty.*, 854 F.2d 454, 458 (11th Cir. 1988) (inmate stated deliberate indifference claim where he repeatedly complained about rash and constipation and inexplicably went from weighing 145 pounds to 92 pounds in only 11 weeks) *with McDermott v. Valley*, 613 F. App'x 646, 647 (9th Cir. 2015) (affirming grant of summary judgment against inmate where he did "not produce[] any evidence beyond bare allegations that his constipation rises to the level of a serious medical need") *and Tsakonas v. Cicchi*, 308 F. App'x 628, 632 (3d Cir. 2009) (probationer's weight loss, eczema, seborrhea, athlete's foot, constipation, and swollen knuckles did not amount to serious medical needs where conditions were "not life-threatening," probationer did not complain about them while incarcerated, and he did not "suffer[] any long-term effects from any delay in treatment"). Plaintiff also fails to identify which named Defendants ignored, denied, or rescheduled his medical call-outs or had specific knowledge of his medical complaints. *See Douglas*, 535 F.3d at 1321-22.[2] Plaintiff has therefore failed to state an actionable claim regarding these allegations, and any such claims he seeks to raise should be dismissed without prejudice.

---

[2] The complaint indicates that Plaintiff is receiving at least some medical care at DSP: he saw a doctor on at least one occasion, saw a specialist on another, and has been provided medication for pain, sinuses, and blood pressure. Compl. 6, ECF No. 1. Although Plaintiff mentions that prison officials have failed "to timely refill all [his] prescriptions," Compl. 5, ECF No. 1, he does not provide any other details about this allegation.

### C.   Conditions of Confinement

Next, Plaintiff contends that the conditions of his confinement violated his constitutional rights, primarily because he is housed in a "3 man room with no heat in winter."   Compl. 6, 8, ECF No. 1.   While "[t]he Constitution does not mandate comfortable prisons," it also does not "permit inhumane ones, and it is now settled that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment[.]"   *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (internal quotation marks and citations omitted).   To state a conditions-of-confinement claim, a prisoner must show that the deprivations he suffers are objectively and sufficiently "serious" or "extreme" so as to constitute a denial of the "minimal civilized measure of life's necessities."   *Thomas v. Bryant*, 614 F.3d 1288, 1304 (11th Cir. 2010). This standard is only met when the challenged conditions pose "an unreasonable risk of serious damage to [the prisoner's] future health or safety," *Chandler v. Crosby*, 379 F.3d 1278, 1289 (11th Cir. 2004) (internal quotation marks omitted), or if society "considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk," *Helling v. McKinney*, 509 U.S. 25, 36 (1993).   A prisoner must also show that prison officials had the requisite state of mind, *i.e.*, that the officials knew of the excessive risk to inmate health or safety and disregarded that risk.   *See Campbell v. Sikes*, 169 F.3d 1353, 1364 (11th Cir. 1999).

Plaintiff has not stated a claim to the extent he is alleging his cell does not have heat. A prisoner may state a cognizable Eighth Amendment claim by alleging that prison

officials have subjected him to extreme temperatures in his cell.  *See, e.g., Bennett v. Chitwood*, 519 F. App'x 569, 574 (11th Cir. 2013) (per curiam).   In evaluating such claims, the Court must "consider both the 'severity' and the 'duration' of the prisoner's exposure to extreme temperatures."   *Id.*; *see also Flores v. O'Donnell*, 36 F. App'x 204, 206-07 (7th Cir. 2002) (holding that factors to consider in determining whether cold cell temperatures amount to constitutional violation include "the severity of the cold; its duration; whether the prisoner has alternative means to protect himself from the cold; the adequacy of such alternatives; as well as whether he must endure other uncomfortable conditions as well as cold" (internal quotation marks omitted)).   Plaintiff contends the temperature in his cell got down to 40 degrees at some point during the winter, but he does not allege how long he was subjected to this temperature, that he had no other options to warm himself, or that he suffered anything other than mere discomfort from the cold. Compl. 8, ECF No. 1.   Plaintiff's allegation is therefore too conclusory to show that the conditions in his cell violated the Constitution.   *See, e.g., Woods v. Edwards*, 51 F.3d 577, 581 (5th Cir. 1995) (per curiam) ("While the temperature in extended lockdown may be uncomfortable, that alone cannot support a finding that the plaintiff was subjected to cruel and unusual punishment in violation of the Eighth Amendment."); *see also Chandler*, 379 F.3d at 1295 (holding that "a prisoner's mere discomfort, without more, does not offend the Eighth Amendment").

Plaintiff's allegation that he is in a three-man cell also fails to state an actionable Eighth Amendment claim.   Although it is unclear from the Complaint, the Court will

assume that the number of inmates in Plaintiff's cell exceeds its capacity.   But this fact alone does not mean prison officials violated Plaintiff's constitutional rights absent an allegation that this overcrowding also caused a deprivation of some other essential need. *See, e.g., Evans v. St. Lucie Cnty. Jail*, 448 F. App'x 971, 975 (11th Cir. 2011) (per curiam) (double-capacity cell where two inmates were required to sleep in mattresses on the floor did not rise to level of constitutional violation, even where inmate tripped on mattress and injured himself); *Fischer v. Ellegood*, 238 F. App'x 428, 433 (11th Cir. 2007) (per curiam) ("Even double capacity [celling], the Supreme Court has held, does not violate the constitution absent 'deprivations of essential food, medical care, or sanitation.'" (quoting *Rhodes*, 452 U.S. at 347-48)); *Stevenson v. Whetsel*, 52 F. App'x 444, 446 (10th Cir. 2002) (holding that prisoner failed to allege facts sufficient to show that placement in three-man cell denied him "the minimal civilized measure of life's necessities" and therefore court was "unable to say that placing three prisoners in a cell designed for two, of itself, rises to the level of an Eighth Amendment violation" without additional factual support).   These allegations therefore fail to state a claim upon which relief may be granted.

### D.    Claims Regarding Shakedowns and Lockdowns

Next, Plaintiff contends that he has been subjected to shakedowns and lockdowns as a form of prison discipline, even when he didn't do anything wrong.   Compl. 6, ECF No. 1.   These claims could perhaps implicate Plaintiff's rights under the Due Process Clause of the Fourteenth Amendment, which protects against deprivations of "life, liberty, or property without the due process of law."   U.S. Const. amend. XIV.   In order to

establish a procedural due process claim under 42 U.S.C. § 1983, a plaintiff must generally show that a person acting under color of state law deprived him of a constitutionally protected liberty or property interest without constitutionally adequate process. *See, e.g., Foxy Lady, Inc. v. City of Atlanta*, 347 F.3d 1232, 1236 (11th Cir. 2003) (per curiam).

"Whether an inmate has a protected liberty interest that would entitle him to due process protections 'is often a difficult determination in the context of a prison, because prisoners have <u>already</u> been deprived of their liberty in the ordinary sense of the term.'" *Jacoby v. Baldwin Cnty.*, 835 F.3d 1338, 1346 (11th Cir. 2016) (quoting *Bass v. Perrin*, 170 F.3d 1312, 1318 (11th Cir. 1999) (emphasis in original)). The Supreme Court has therefore "made clear that there are two circumstances in which a prisoner can be further deprived of his liberty such that due process is required." *Bass*, 170 F.3d at 1318. First, a prisoner is entitled to due process "when an increased restraint 'exceed[s] [his] sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force." *Jacoby*, 835 F.3d at 1346 (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995) (alterations in original)). Second, a prisoner is entitled to due process if a change in the prisoner's conditions of confinement "'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Id.*

Plaintiff's allegations are devoid of any facts suggesting that Defendants took any sort of action that unexpectedly altered the terms of his imprisonment, such as revocation of good time credit. *See, e.g., Smith v. Deemer*, 641 F. App'x 866, 867 (11th Cir. 2016) (per curiam) ("A hallmark example of action that unexpectedly alters an inmate's term of

imprisonment is the revocation of good-time credit.").   Accordingly, Plaintiff must demonstrate that the denial of due process caused him to suffer an "atypical and significant hardship."   *Sandin*, 515 U.S. at 483.   A prisoner can demonstrate that he suffered an "atypical and significant hardship" implicating his protected liberty interests if the more restrictive conditions to which he is subjected "are particularly harsh compared to ordinary prison life or if he remains subject to those conditions for a significantly long time."   *Earl v. Racine Cnty. Jail*, 718 F.3d 689, 691 (7th Cir. 2013) (per curiam).

Plaintiff has not pleaded facts to show that either of these circumstances apply to the shakedowns or lockdowns to which he was subjected, nor does he contend that prison officials conducted any shakedown or lockdown in an abusive manner.   Shakedowns and lockdowns are ordinary incidents of prison life that help to ensure the safety and security of the facility and its inmates.   Indeed, Plaintiff does not allege that prison officials conducted lockdowns or shakedowns for any reasons other than safety and security.   As such, these claims should be dismissed.   *See, e.g., Richard v. Collins*, No. 96-40939, 1997 WL 811505, at *1 (5th Cir. Dec. 9, 1997) (per curiam) (holding that inmate failed to state claim regarding "a security lockdown after a riot in which he did not participate" where inmate did not allege "that the lockdown was for any purpose other than the security and safety of inmates").

### E.   *Transfer Claims*

Plaintiff also complains that prison officials refuse to transfer him to a different, more comfortable prison where Plaintiff would not be "housed with so many young gang

members and close security inmates who tend to be violent." Compl. 8, ECF No. 1. Plaintiff has no due process right to be held in the prison of his choice. *Meachum v. Fano*, 427 U.S. 215, (1976) ("That life in one prison is much more disagreeable than in another does not in itself signify that a Fourteenth Amendment liberty interest is implicated when a prisoner is transferred to the institution with the more severe rules."). And, as noted above, Plaintiff has not alleged facts sufficient to show a violation of his Eighth Amendment right to be reasonably protected from violence at the hands of other inmates. Plaintiff's preference for a transfer therefore does not rise to the level of a constitutional claim, and any such claim must be dismissed without prejudice.

### F.    Property Claims

Finally, Plaintiff contends Defendant Turner, a unit manager at WSP, allowed other inmates to move into Plaintiff's cell while Plaintiff was hospitalized and did not secure or inventory Plaintiff's belongings. Compl. 5, ECF No. 1. As a result, Plaintiff "lost everything but the bloody clothes on [his] back." *Id.*

As an initial matter, it appears from Plaintiff's allegations that Defendant Turner was simply negligent in failing to inventory or secure Plaintiff's property. If the loss of his property was unintentional, Plaintiff has failed to state a claim; merely "negligent conduct does not give rise to § 1983 liability for resulting unintended loss of or injury to life, liberty, or property." *Cannon v. Macon Cnty.*, 1 F.3d 1558, 1563 (11th Cir. 1993).

Even if Defendant Turner intentionally lost Plaintiff's property, however, Plaintiff's allegations would still fail to state an actionable claim. To the extent Plaintiff may be

attempting to assert a due process claim, "an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available." *Hudson v. Palmer*, 468 U.S. 517, 533 (1984). "Georgia provides a civil cause of action for the wrongful conversion of personal property." *Moore v. McLaughlin*, 569 F. App'x 656, 658 (11th Cir. 2014) (per curiam) (citing O.C.G.A. § 51-10-1). The Eleventh Circuit has "held that this cause of action constitutes a suitable postdeprivation remedy for procedural due process violations." *Id.* Plaintiff has not alleged that he has attempted to pursue a civil action based on Defendant Turner's actions or that such a remedy is not available to him, and he has therefore failed to state a due process claim concerning the loss of his personal property.

Plaintiff also mentions that Defendant Turner lost some of Plaintiff's legal documents while Plaintiff was hospitalized. Compl. 5, ECF No. 1. Plaintiff's claims could therefore also implicate his right of access to the courts. "Access to the courts is clearly a constitutional right, grounded in the First Amendment, the Article IV Privileges and Immunities Clause, the Fifth Amendment, and/or the Fourteenth Amendment." *Chappell v. Rich*, 340 F.3d 1279, 1282 (11th Cir. 2003) (citing *Christopher v. Harbury*, 536 U.S. 403, 415 n. 12 (2002)). "To have standing to seek relief under this right, however, a plaintiff must show actual injury by 'demonstrat[ing] that a nonfrivolous legal claim ha[s] been frustrated or . . . impeded.'" *Jackson v. State Bd. of Pardons & Paroles*, 331 F.3d 790, 797 (11th Cir. 2003) (alterations and omission in original) (citing *Lewis v.*

*Casey*, 518 U.S. 343, 353 (1996)).   In other words, "[t]he injury requirement means that the plaintiff must have an underlying cause of action the vindication of which is prevented by the denial of access to the courts."   *Cunningham v. Dist. Attorney's Office for Escambia Cnty.*, 592 F.3d 1237, 1271 (11th Cir. 2010).   In this case, Plaintiff does not explain how the loss of his legal documents prevented him from vindicating a nonfrivolous legal claim. Because Plaintiff has therefore failed to allege that he suffered an "actual injury," any access-to-courts claim based on the loss of Plaintiff's legal documents should also be dismissed without prejudice.

## IV.   Conclusion

For the foregoing reasons, Plaintiff's motion to proceed *in forma pauperis* (ECF No. 3) is **GRANTED**, but Plaintiff's request for appointed counsel is **DENIED**.   It is also **RECOMMENDED** that Plaintiff's claims be **DISMISSED without prejudice** for failure to state a claim upon which relief may be granted.

## OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to these recommendations with the Honorable Marc T. Treadwell, Chief United States District Judge, **WITHIN FOURTEEN (14) DAYS** after being served with a copy of this Recommendation.   Any objection is limited in length to **TWENTY (20) PAGES**.   *See* M.D. Ga. L.R. 7.4.   The parties may seek an extension of time in which to file written objections, provided a request for an extension is filed prior to the deadline for filing written objections.   Failure to object in accordance with the provisions of § 636(b)(1) waives the

right to challenge on appeal the district judge's order based on factual and legal conclusions to which no objection was timely made.   *See* 11th Cir. R. 3-1.

**SO ORDERED AND RECOMMENDED**, this 22nd day of March, 2024.


s/ Charles H. Weigle
Charles H. Weigle
United States Magistrate Judge